IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. |
| Plaintiff, | : | |
| v. | : | 3:18 cr 73 |
| KAITLIN E. KOHER, (1)<br>(Counts 1 & 2) | : | INDICTMENT<br>7 U.S.C. § 2024(b) |
| | : | 18 U.S.C. § 371 |
| AARON E. LUKE, (2)<br>(Counts 1 & 2) | : | 18 U.S.C. § 1343<br>18 U.S.C. § 1349 |
| ANDREW C. HESS, (3)<br>(Counts 1-12) | : | 18 U.S.C. § 1956(h)<br>FORFEITURE |
| | : | |
| WILLIAM K. LAMBERT, (4)<br>(Counts 1-2, 5-6 & 9-12) | : | |
| JOSEPH E. HENDRICKS, (5)<br>(Counts 1 & 2) | : | |
| | : | |
| KYLE P. NICHOLSON, (6)<br>(Counts 1 & 2) | : | |
| JAMES E. LEESON, JR., (7)<br>(Counts 1-2, 4 & 8) | : | |
| | : | |
| OHIO DIRECT DISTRIBUTORS LLC (8)<br>(Counts 1 & 2) | : | |
| Defendants. | | |

THE GRAND JURY CHARGES THAT:

<u>COUNT 1</u>
[18 U. S. C. § 1956(h)]
(Conspiracy to Commit Money Laundering)

<u>INTRODUCTION</u>

1. The Supplemental Nutrition Assistance Program (SNAP), formerly known as the

Food Stamp Program (FSP), is a federally funded national nutrition aid program administered by the United States Department of Agriculture (USDA) through its Food and Nutrition Service (FNS). SNAP is a "means tested" entitlement program intended to alleviate hunger and malnutrition while strengthening the nation's agriculture economy.

2. Between 1939 and 2001, FSP beneficiaries were issued paper coupons as a way to acquire low, or no cost food for themselves and families. In 2001, the FSP transitioned from the paper coupon system to the current Electronic Benefit Transfer (EBT) system of access devices to distribute benefits. These EBT cards are similar to commercial debit cards.

3. Since the passage of the Food Stamp Act of 1964, (7 U.S.C. §§ 2001 *et* seq.), the responsibility for the day-to-day administration of the SNAP Program was delegated to individual states. In Ohio, the Department of Job and Family Services (ODJFS) is tasked with administering the program.

4. ODJFS issues SNAP recipients *Ohio Direction EBT* Cards. Each month, SNAP benefits are directly deposited into authorized recipients' EBT card accounts to subsidize food purchases at super markets, convenience stores, and other food retailers including farmers' markets

5. With the passage of the 2008 Farm Bill, the FSP program was formally replaced by the present SNAP program.

6. Pursuant to the provisions of the Food and Nutrition Act of 2008, SNAP recipients are only permitted to exchange their SNAP benefits for specific "eligible food items". Pursuant to federal regulations, SNAP benefits cannot be exchanged, redeemed or bartered for cash, alcoholic beverages, tobacco, controlled substances, vitamins, medicine, pet food, cleaning products *or any other non-food items*.

7. The FNS issues SNAP vendor authorization licenses to approved retail food stores. These vendor licenses authorize food retailers to sell approved food products to SNAP EBT beneficiaries.

8. SNAP transactions are electronically completed via EBT processing equipment commonly referred to as a Point of Sale (POS) devices.

9. POS devices permit authorized retailers to communicate with U.S. Government contractors who operate central computer databases that automatically debit SNAP recipients' EBT card balances at the time of a food purchase and electronically remit corresponding reimbursements to vendors.

10. SNAP EBT transactions originating in Ohio are processed by a central computer data base operated by *Conduent Government Solutions (Conduent)*, a U.S. Government contractor located in Austin, Texas. *Xerox Total Solutions (XTS)* previously held this U.S. Government contract.

11. During all times relevant to Count 1 of this indictment, the defendant, **KAITLIN E. KOHER**, owned and operated a food distributorship known as Ohio Direct Distributors ("**ODD**") which was initially located at 1314 Erie Street, Suite A, Massillon, Ohio 44646 and later at 1709 Lincoln Way East, Suite B, Massillon, Ohio 44646. Defendant **ODD** engaged in a door-to-door route delivery service of various beef, poultry, pork and fish products to retail customers located throughout Ohio, Pennsylvania, Michigan and West Virginia.

12. From on or about July 10, 2011 and continuing through on or about January 17, 2018, both dates being approximate and inclusive, while in the Southern District of Ohio and elsewhere, the defendant, **KAITLIN E. KOHER**, together with defendants **AARON E. LUKE, ANDREW C. HESS, WILLIAM K. LAMBERT, JOSEPH E. HENDRICKS, KYLE P. NICHOLSON, JAMES E. LEESON, JR.** and **ODD** together with, other individuals, both known and unknown to the Grand Jury, did knowingly, willfully and unlawfully combine, conspire, confederate, and agree by and between themselves, to commit and engage in fraudulent SNAP EBT financial transactions that affected interstate commerce involving property which represented

criminal proceeds and profits of certain unlawful activity, and by doing so, engaged in financial transactions that, in fact involved the proceeds of specified unlawful activity, with the intent to promote the carrying on of certain specified unlawful activities, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and 18 U.S.C. § 2.

## OBJECTS OF THE CONSPIRACY

13. It was an object of the conspiracy that certain fraudulent SNAP EBT financial transactions be completed knowing that the property and money associated with said transactions represented proceeds and profits from specified unlawful activities to include: wire fraud in violation of 18 U.S.C. § 1343; SNAP benefits trafficking in violation of 7 U.S.C. § 2024(b); theft of U. S. Government Property in violation of 18 U.S.C. § 641; and money laundering in violation of 18 U.S.C. § 1956(a)(1).

14. It was further an object of the conspiracy that certain fraudulent SNAP EBT financial transactions be completed with the intent to promote the carrying on of acts of wire fraud in violation of 18 U.S.C. § 1343; SNAP benefits trafficking in violation of 7 U.S.C. § 2024(b); theft of U. S. Government Property in violation of 18 U.S.C. § 641; and money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

15. It was further an object of the conspiracy for the conspirators to enjoy the benefits of said criminal proceeds generated through their individual and corporate conspiratorial activities while simultaneously insulating themselves from detection by law enforcement and prosecution authorities.

## THE MANNER AND MEANS

16. During all times relevant to Count 1 of this indictment, the defendant, **KAITLIN E. KOHER**, maintained certain bank accounts at PNC Bank to further the objects of the conspiracy.

4

17. Beginning on or about September 1, 2010, and continuing until at least on or about January 22, 2018, defendant **KAITLIN E. KOHER** maintained PNC Bank account no. xxxx-3025 which was held in the name of "Kaitlin E. Koher, DBA Ohio Direct Distributors". She held exclusive signatory authority over this account during all times relevant to this indictment.

18. On or about June 9, 2011, defendant **KAITLIN E. KOHER**, prepared and filed a "USDA SNAP Application for Stores" on behalf of **ODD**. In this application she listed herself as ODD's "owner". As part of this application, she specifically acknowledged and assumed all legal responsibility and liability for any and all future violations of SNAP rules and requirements that could or may be committed by any **ODD** employees or independent contractors.

19. On or about July 10, 2011, FNS approved said application and issued the defendant, **KAITLIN E. KOHER**, a SNAP vendor authorization number on behalf of **ODD**.

20. Beginning on or about September 18, 2013, and continuing until at least on or about January 22, 2018, defendant **KAITLIN E. KOHER** maintained PNC Bank account no. xxxx-3287 which was held in the name of "Ohio Direct Distributors". She held exclusive signatory authority over this account during all times relevant to this indictment.

21. On or about December 30, 2013, FNS officially re-authorized **ODD** as a SNAP vendor. As part of this re-authorization process, the defendant, **KAITLIN E. KOHER**, continued to be listed herself as **ODD**'s "owner".

22. On or about July14, 2014, defendant **KAITLIN E. KOHER** completed, signed and submitted a merchant processing application and agreement form. As a result, **ODD** became authorized to process commercial credit card and SNAP EBT transactions. As part of this application, she designated her PNC Bank account no. xxxx-3287 as a repository for all future **ODD** U.S. Government SNAP EBT redemptions.

23. As a result of the above filings, **ODD** was approved to accept SNAP EBT access devices tendered by authorized SNAP patrons for the sale of eligible food products.

24. During all times relevant to Count 1 of this indictment, *Conduent* and its predecessor *Xerox Total Solutions* (*XTS*), both of which were based in Austin, Texas, were contracted by the U.S. Government to maintain computer data bases that monitored and controlled all SNAP EBT transactions completed within the State of Ohio.

25. During all times relevant to Count 1 of this indictment, *Conduent*, and/or *XTS* authorized and directed interstate electronic wire transfers of U.S. Government SNAP redemption funds to be deposited into **ODD**'s PNC Bank accounts no. xxxx-3287 and xxxx-3025.

26. During all times relevant to Count 1 of this indictment, defendant **KAITLIN E. KOHER** knowingly and illegally caused, and encouraged the exchange, redemption and bartering of SNAP benefits for U. S. currency and other ineligible items to include gift cards and the extension of credit.

27. During all times relevant to Count 1 of this indictment, **ODD** sales representatives aggressively targeted SNAP EBT recipients who had large families in hopes of maximizing potential sales to customers believed to receive large monthly SNAP benefits.

28. During all times relevant to Count 1 of this indictment, **ODD** sales representatives established revolving SNAP EBT credit accounts for SNAP customers. This practice was specifically designed to "lock-in" SNAP EBT recipient customers to **ODD**'s so-called "Eat Now, Pay Later" and/or "Split Payments" Programs. This schemes *de facto* stretched SNAP purchases and reimbursements over a multi-month time frame. This credit practice committed the SNAP recipient/patron to using a portion of "future monthly SNAP EBT benefits" for current month **ODD** purchases. These practices violated the provisions of 7 C.F.R. § 278.2(f).

29. During all times relevant to Count 1 of this indictment, **ODD** sales representatives would also exchange SNAP EBT benefits for unauthorized consideration to include cash and pre-paid gift cards. This illicit SNAP trafficking practice was encouraged through the use of "higher dollar specials" which violated 7 C.F.R. § 271.1.

30. During all times relevant to Count 1 of this indictment, **ODD** sales representatives directly and indirectly engaged in overt and covert intimidation tactics with SNAP recipient/patrons. These tactics were designed to ensure that SNAP EBT funds were available for **ODD** post-dated transactions that would occur in future months. Customers were warned of possible state criminal prosecution if they considered cancelling their SNAP EBT card to avoid paying for these post-dated transactions.

31. **ODD** additionally distributed flyers and notices to SNAP EBT customers which cited Ohio Revised Code (O.R.C.) § 2913.46, Trafficking Food Stamp Benefits as a possible sanction if the recipient considered cancelling his/her SNAP EBT card due to an insufficient balance.

32. During all times relevant to Count 1 of this indictment, **ODD** sales representatives falsely advised SNAP EBT recipient customers that it was legal and proper for **ODD** sales employees to request and maintain individual SNAP EBT card information, to include: EBT card account numbers, personal identification numbers, the last four numbers of recipient social security numbers, dates of birth and addresses. **ODD** personnel collected and maintained this sensitive personal information in order to illegally access, determine and monitor recipient SNAP EBT account information, reload dates and balances in order to illicitly process post-dated transactions, oftentimes without the individual customer's knowledge, involvement or permission.

33. During all times relevant to Count 1 of this indictment, **ODD** employees and sales representatives would routinely complete SNAP EBT transactions without the individual recipient's knowledge or consent.

7

34. During all times relevant to Count 1 of this indictment, **ODD** employees and sales representatives routinely maintained logs, ledgers, and notebooks on SNAP EBT customers to assist in the timely completion of post-dated sales transactions.

35. During all times relevant to Count 1 of this indictment, the defendant, **KAITLIN E. KOHER**, and other **ODD** employees/representatives/and independent contractors, continually, repeatedly, and illegally acquired and redeemed SNAP benefits in exchange for ineligible items, to include cash, gift cards, and illegally extended SNAP EBT account credit through a process of post-dating EBT transactions.

36. From on or about August 2011 and continuing until on or about September 2017, both dates being approximate and inclusive, the defendant, **KAITLIN E. KOHER**, and her named and unnamed co-conspirators, directly and indirectly caused in excess of 44,531 individual SNAP EBT transactions to be completed, which represent approximately $9,073,078.86 in total value to be completed.

37. It is estimated that between August 2011 and September 2017, approximately 93% of **ODD**'s aforesaid SNAP EBT transactions were fraudulent. These fraudulent transactions resulted in approximately $8,465,822.00 in U.S. government funds being transmitted via interstate money wire transfers by *Conduent* and *XTS*, for deposit into **ODD**'s said PNC Bank accounts.

All in violation of 18 U.S.C. § 1956(h).

**COUNT 2**
**[18 U.S.C. §§ 371 and 1349]**
**(Conspiracy)**

38. The Grand Jury hereby reiterates all allegations contained in paragraphs 1 – 37 of this indictment as if they were fully reproduced herein.

39. From on or about July 10, 2011 and continuing through on or about January 17, 2018, both dates being approximate and inclusive, while in the Southern District of Ohio,

defendants **KAITLIN E. KOHER, AARON E. LUKE, ANDREW C. HESS, WILLIAM K. LAMBERT, JOSEPH E. HENDRICKS, KYLE P. NICHOLSON, JAMES E. LEESON, JR.** and **ODD** together with other individuals, both known and unknown to the Grand Jury, did knowingly, willfully and unlawfully combine, conspire, confederate, and agree by and between themselves, to accomplish a common unlawful plan, scheme and artifice to defraud the U.S. Government of money, benefits and property through the use of false and fraudulent pretenses, representations and promises, by unlawfully acquiring, possessing and using SNAP EBT access devices and associated personal recipient data to gain SNAP benefits, moneys and reimbursements.

40. During the said time frame as set forth in paragraph 39 above, while in the Southern District of Ohio and elsewhere, defendants **KAITLIN E. KOHER, AARON E. LUKE, ANDREW C. HESS, WILLIAM K. LAMBERT, JOSEPH E. HENDRICKS, KYLE P. NICHOLSON, JAMES E. LEESON, JR.** and **ODD** together with other individuals, both known and unknown to the Grand Jury, did knowingly, willfully and unlawfully combine, conspire, confederate, and agree by and between themselves, to commit certain offenses against the United States to include:

   a. Illegally acquire, possess, use and otherwise traffic in SNAP benefits in violation of 7 U.S.C. § 2024(b);

   b. Steal and convert U. S. Government property in violation of 18 U.S.C. § 641;

   c. Submitting False Claims to the United States in violation of 18 U.S.C. § 287; and

   d. Engaging in acts of wire fraud in violation of 18 U.S.C. § 1343.

### OBJECTS OF THE CONSPIRACY

41. It was an object of the conspiracy for the conspirators to illegally acquire, possess, use and otherwise traffic in SNAP benefits obtained through EBT access devices issued to authorized SNAP recipients.

9

42. It was further an object of the conspiracy for the conspirators to submit false SNAP reimbursement claims to the U.S. Government and its contractors.

43. It was further an object of the conspiracy for the conspirators to devise a fraudulent scheme and artifice to defraud, steal and convert U. S. Government money and property by means of false and fraudulent pretenses, representations and promises through the use of interstate wire and electronic communications for the purpose of executing said scheme.

44. It was further an object of this conspiracy for the conspirators to conceal, disguise and insulate their respective roles in carrying out the aforesaid criminal scheme from federal and state regulatory authorities, law enforcement and prosecution authorities.

## THE MANNER AND MEANS OF THE CONSPIRACY

45. The Grand Jury hereby reiterates the allegations contained in paragraphs 1 – 37 and 39 - 44 of this indictment as if they were fully reproduced herein.

## OVERT ACTS

46. In furtherance of this conspiracy, and to effect the objects thereof, at least one conspirator knowingly committed one of the following overt acts while in the Southern District of Ohio:

   a. Between on or about July 10, 2011 and January 17, 2018, **ODD** sales representatives including the above referenced co-defendants aggressively targeted large family SNAP EBT recipients residing in the Southern District of Ohio and elsewhere with the intent of maximizing retail sales to customers with large monthly SNAP benefit payments;

   b. During said time frame, **ODD** sales representatives including the above referenced co-defendants established revolving SNAP EBT credit accounts for recipient customers. This practice was designed to lock-in recipients into **ODD**'s so-called "Eat Now, Pay Later" and/or "Split Payments" Programs. These schemes were designed to encourage SNAP EBT customers to stretch their purchases and benefit payments out over a multi-month period. This unauthorized credit practice committed the recipient to using a portion of "future promised monthly SNAP EBT benefits" for current **ODD** purchases.

10

c. During said time frame, **ODD** sales representatives including the above referenced co-defendants would exchange SNAP EBT benefits for unauthorized pre-paid gift cards. This illicit practice was designed to encourage the purchase of "higher dollar specials" using SNAP EBT benefits.

d. During said time frame, **ODD** sales representatives including the above referenced co-defendants would engage in intimidation tactics with SNAP EBT recipient customers designed to ensure SNAP EBT funds would be available for post-dated transactions expected to occur in future months. SNAP EBT recipients were specifically warned of possible state criminal prosecution if they were to cancel their SNAP EBT card, or otherwise allow an inadequate balance to occur thereby jeopardizing split post-dated transactions.

e. During said time frame, **ODD** sales representatives/employees including the above referenced co-defendants would mail or cause to be mailed printed flyers and notices to SNAP EBT recipient customers which warned of possible criminal prosecution for Trafficking Food Stamp Benefits pursuant to Ohio Revised Code (ORC) § 2913.46, if they were to decide to cancel their SNAP EBT card or maintained an insufficient benefits balance.

f. During said time frame, **ODD** sales representatives including the above referenced co-defendants would falsely advise SNAP EBT recipient customers it was legal and permissible for **ODD** sales employees to request and maintain personal identifying information to include: SNAP EBT card account information, PIN information, the last four numbers of the recipient customer's social security number, date of birth and address. This sensitive personal information was thereafter used by **ODD** personnel to illegally access and monitor recipient customer account information and illicitly process split post-dated transactions without recipients' knowledge or permission.

g. During said time frame, **ODD** employees/representatives including the above referenced co-defendants would complete SNAP EBT transactions without the individual recipient's knowledge or consent.

h. During said time frame, **ODD** employees/representatives including the above referenced co-defendants maintained logs, ledgers, and notebooks containing recipient/customer's SNAP EBT customer personal information for the timely completion of split post-dated transactions.

i. During said time frame, **ODD** drivers/employees including the above referenced co-defendants would telephonically contact SNAP EBT retailer call centers to request personal recipient customer information. During said conversations, an authorization approval number was provided thereby "freezing" the respective transaction amount pending final settlement of the SNAP EBT transaction.

11

j.     During said time frame, **ODD** drivers/employees including the above referenced co-defendants would thereafter manually enter said personal information described above into an **ODD** POS terminal in order to reconcile a "voucher settlement".

k.     On or about March 16, 2017, at or near 522 Erie St. North, Massillon, Ohio, defendant **KYLE P. NICHOLSON** in his capacity as an **ODD** salesman sold approximately $125 worth of meat product to an undercover law enforcement official posing as a SNAP EBT recipient customer bearing an *Ohio Direction EBT Card* bearing account # 1881 in return for $175 worth of SNAP EBT benefits and a $10 Walmart gift card.

l.     On or about, March 24, 2017, in Massillon, Ohio, defendant **JOSEPH E. HENDRICKS** in his capacity as an **ODD** salesman sold approximately $400 worth of meat product to an undercover law enforcement official posing as a SNAP EBT recipient customer bearing an *Ohio Direction EBT Card* bearing account # 1881 using a so-called split "post-dating" or "double voucher" credit scheme.

m.     On or about April 7, 2017, at or near Chevy Lane, Centerville, Ohio, defendant **ANDREW C. HESS** in his capacity as an **ODD** salesman sold approximately $400 worth of meat product to an undercover law enforcement official posing as a SNAP EBT recipient customer bearing an *Ohio Direction EBT Card* bearing account # 9441 in return for $400 worth of SNAP EBT benefits and a $10 Kroger gift card.

n.     On or about May 12, 2017, at or near 799 West Main Street, Loveland, Ohio, defendants **ANDREW C. HESS** and **JAMES E. LEESON** in their capacities as **ODD** salesmen sold approximately $400 worth of meat product to an undercover law enforcement official posing as a SNAP EBT recipient customer bearing an *Ohio Direction EBT Card* bearing account # 9441 in return for $400 worth of SNAP EBT benefits and a $15 Visa gift card.

o.     On or about May 23, 2017, in Massillon, Ohio, defendant **JOSEPH E. HENDRICKS** in his capacity as an **ODD** salesman sold approximately $400 worth of meat product to an undercover law enforcement official posing as a SNAP EBT recipient customer bearing an *Ohio Direction EBT Card* bearing account # 2047 using a so-called split "post-dating" or "double voucher" credit scheme.

p.     On or about June 9, 2017, at or near 799 West Main Street, Loveland, Ohio, defendants **ANDREW C. HESS** and **WILLIAM K. LAMBERT** in their capacities as **ODD** salesmen sold approximately $400 worth of meat product to an undercover law enforcement official posing as a SNAP EBT recipient customer bearing an *Ohio Direction EBT Card* bearing account # 9441 in return for $400 worth of SNAP EBT benefits and a $15 Visa gift card.

q.     On or about July 12, 2017, in Massillon, Ohio, defendant **JOSEPH E. HENDRICKS** in his capacity as an **ODD** salesman sold approximately $400 worth of meat product to an undercover law enforcement official posing as a SNAP EBT

        recipient customer bearing an *Ohio Direction EBT Card* bearing account # 2047 using a so-called split "post-dating" or "double voucher" credit scheme.

r.   On or about July 31, 2017, at or near 799 West Main Street, Loveland, Ohio, defendants **ANDREW C. HESS** and **WILLIAM K. LAMBERT** in their capacities as **ODD** salesmen sold approximately $400 worth of meat product to an undercover law enforcement official posing as a SNAP EBT recipient customer bearing an *Ohio Direction EBT Card* bearing account # 9441 using a so-called split "post-dating" or "double voucher" credit scheme, and also provided a $20 Speedway gift card.

s.   On or about November 16, 2017, in Massillon, Ohio, defendant **JOSEPH E. HENDRICKS** in his capacity as an **ODD** salesman sold approximately $400 worth of meat product to an undercover law enforcement official posing as a SNAP EBT recipient customer bearing an *Ohio Direction EBT Card* bearing account # 2047 using a so-called split "post-dating" or "double voucher" credit scheme.

t.   On or about January 4, 2018, in Massillon, Ohio defendant **JOSEPH E. HENDRICKS** in his capacity as an **ODD** salesman sold approximately $400 worth of meat product to an undercover law enforcement official posing as a SNAP EBT recipient customer bearing an *Ohio Direction EBT Card* bearing account # 2047 using a so-called split "post-dating" or "double voucher" credit scheme.

u.   On or about January 4, 2018, in Massillon, Ohio, defendant **JOSEPH E. HENDRICKS** in his capacity as an **ODD** salesman sold an additional approximate $400 worth of meat product to a SNAP EBT recipient customer bearing an *Ohio Direction EBT Card* bearing account # 2047 using a so-called split "post-dating" or "double voucher" credit scheme.

### COUNTS 3 - 6
### [7 U.S.C. § 2024(b)]
### (SNAP FRAUD)

47.   On or about the dates set forth in the schedule below, while in the Southern District of Ohio, and elsewhere, the below listed defendants **ANDREW C. HESS**, **WILLIAM K. LAMBERT** and **JAMES E. LEESON, JR.,** did knowingly acquire, possess, use and traffic SNAP EBT devices as defined by 7 U.S.C. § 2012 (a) and (i), each having a value of $100 or more, in a manner not authorized by 7 U.S.C., Chapter 51 and the regulations issued pursuant thereto (7 C.F.R. §§ 271-285), in that they knowingly and unlawfully accepted SNAP benefits on behalf of ODD, an authorized retail food store, in partial exchange for gift cards and the extension of credit in payment for food items sold.

| Count | Date | EBT Withdrawal | Price Paid | Gift Card Tendered | Defendant(s) |
|---|---|---|---|---|---|
| 3 | 4/17/17 | $400/Split Sale | $400 | $10 Kroger | HESS |
| 4 | 5/12/17 | $400/Split Sale | $400 | $15 Visa | HESS & LEESON |
| 5 | 6/9/17 | $400/Split Sale | $400 | $15 Visa | HESS & LAMBERT |
| 6 | 7/31/17 | $400/Split Sale | $400 | $20 Speedway | HESS & LAMBERT |

In violation of 7 U.S.C. § 2024(b).

**COUNTS 7 - 12**
**[18 U.S.C. § 1343]**
**(WIRE FRAUD)**

48. The Grand Jury hereby reiterates the allegations contained in paragraphs 1 – 37 and 39 - 44 of this indictment as if they were fully reproduced herein.

49. On or about the dates set forth in the schedule below, while in the Southern District of Ohio, and elsewhere, having devised a scheme and artifice to defraud the SNAP program of money and property by means of false and fraudulent pretenses, representations and promises, by unlawfully acquiring, possessing, bartering and using a SNAP EBT access device, defendants **KAITLIN E. KOHER, ANDREW C. HESS, WILLIAM K. LAMBERT** and **JAMES E. LEESON, JR.,** for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud did knowingly cause to be electronically transmitted in interstate commerce from a point of sale device maintained at ODD's business premises located in Massillon, Ohio to a central computer data base maintained by *Conduent*, a U.S. Government contractor located in Austin, Texas, by means of wire communications, certain signs, signals and sounds the following SNAP EBT access device purchase transactions.

| Count | Date | EBT Withdrawal Amount | EBT Account No. | Defendant(s) |
|---|---|---|---|---|
| 7 | 4/7/17 | $400 | #9441 | HESS |

14

| | | | | |
|---|---|---|---|---|
| 8 | 5/12/17 | $400 | #9441 | HESS & LEESON |
| 9 | 6/9/17 | $200 | #9441 | HESS & LAMBERT |
| 10 | 7/10/17 | $200 | #9441 | HESS & LAMBERT |
| 11 | 7/31/17 | $200 | #9441 | HESS & LAMBERT |
| 12 | 8/10/17 | $200 | #9441 | HESS & LAMBERT |

In violation of 18 U.S.C. § 1343.

## FORFEITURE ALLEGATION 1

Upon conviction of the offense set forth in Count 1 of this Indictment, the Defendants, **KAITLIN E. KOHER, AARON E. LUKE, ANDREW C. HESS, WILLIAM K. LAMBERT, JOSEPH E. HENDRICKS, KYLE P. NICHOLSON, JAMES E. LEESON, JR.** and **ODD**, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to (the "subject property"):

    a.    PNC Bank Account Number ******3287 in the amount of $150,861.48;

    b.    PNC Bank Account Number ******1025 in the amount of $1,136.75;

    c.    PNC Bank Account Number ******3025 in the amount of $15.39;

    d.    PNC Bank Account Number ******3861 in the amount of $5.01;

    e.    American Funds Account Number ******5417 in the amount of $7,386.45; and

    f.    2011 BMW, VIN WBAPL5G59BNN22844.

## FORFEITURE ALLEGATION 2

Upon conviction of the offense set forth in Count 2 of this Indictment, the Defendants, **KAITLIN E. KOHER, AARON E. LUKE, ANDREW C. HESS, WILLIAM K. LAMBERT, JOSEPH E. HENDRICKS, KYLE P. NICHOLSON, JAMES E. LEESON, JR.** and **ODD**,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation, and the Defendants shall forfeit to the United States, pursuant to 7 U.S.C. § 2024(f), for violating 18 U.S.C. § 371 and 7 U.S.C. § 2024(b), all property, real and personal, used in a transaction or attempted transaction, to commit, or to facilitate the commission of, such violation, or proceeds traceable to such violation, including but not limited to, the subject property set forth above.

## FORFEITURE ALLEGATION 3

Upon conviction of one or more of the offenses set forth in Counts 3 through 6 of this Indictment, the Defendants, **ANDREW C. HESS, WILLIAM K. LAMBERT** and **JAMES E. LEESON, JR.**, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation(s), and pursuant to 7 U.S.C. § 2024(f), all property, real and personal, used in a transaction or attempted transaction, to commit, or to facilitate the commission of, such violation(s), or proceeds traceable to such violation(s).

## FORFEITURE ALLEGATION 4

Upon conviction of one or more of the offenses set forth in Counts 7 through 12 of this Indictment, the Defendants, **KAITLIN E. KOHER, ANDREW C. HESS, WILLIAM K. LAMBERT** and **JAMES E. LEESON, JR.**, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation(s), including but not limited to, the subject property set forth above.

## SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) or 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendants, up to the value of the property described above.

A TRUE BILL

_____
FOREMAN

BENJAMIN C. GLASSMAN
United States Attorney

_____
DWIGHT K. KELLER (0074533)
Assistant United States Attorney

17